## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 22 2017, 6:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy
Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Isaiah Marki Walker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 22, 2017

Court of Appeals Case No.
46A03-1604-CR-870

Appeal from the LaPorte
Superior Court

The Honorable Michael S.
Bergerson, Judge

Trial Court Cause No.
46D01-1506-F3-494

**Altice, Judge.**

## Case Summary

[1] Isaiah Walker appeals his conviction for Level 3 felony rape. He contends that the trial court abused its discretion by denying his request for a continuance after the State failed to include the alleged victim on its witness list filed shortly before the jury trial. Walker also argues that he was entitled to an instruction on the lesser included offense of battery.

[2] We affirm.

## Facts & Procedural History

[3] Several months prior to May 2015, Walker reached out to D.C. on Facebook. The two had never met but Walker knew D.C.'s boyfriend, Juwan Carwell. After Carwell and D.C. broke up, Walker increased his communications with D.C. via Facebook.

[4] On May 5, 2015, Walker and D.C. arranged their first meeting. He was to walk eighteen-year-old D.C. to school the following day. D.C. had recently started at this new school, which was a special school that met for only a few hours each day. D.C. suffers from a seizure disorder and has associated learning difficulties that have resulted in her being held back in school. D.C. walked to school each day and always arrived on time and was neat and tidy in her appearance.

[5] Walker arrived around 10:00 a.m. at D.C.'s home, and she met him outside. They began the forty-five-minute walk to her school. During the walk, Walker

and D.C. talked about several things. At some point, he asked D.C. if she and Carwell ever had sex. D.C. said they had not. Walker then indicated that he would like to have sex with her. She declined Walker's offer, indicating that she was not ready.

[6] As they approached an alley, Walker grabbed D.C.'s wrist tightly and pulled her down the alley. She tried to pull away, but he kept assuring her that everything would be okay and that nothing was going to happen. Walker led D.C. down the alley and eventually let go of her arm. When they came to the end of the alley, D.C. tried to walk in the direction of her school. Walker grabbed her arm again and pulled her down another alley. D.C. was frightened and again tried unsuccessfully to free her arm. She told Walker that she did not want to go and was just trying to get to school. Walker told her to trust him.

[7] Walker took D.C. to an abandoned house in a secluded area. After looking around, he directed her up some outdoor stairs to a landing. D.C. turned to walk back down the stairs and then Walker said, "Let's have sex." *Transcript* at 225. D.C. said no, she was not ready for sex, and she wanted to go to school. Walker proceeded to unfasten her pants and then his own. He sat her down and gently pushed her back onto the landing. He then raised her legs toward her chest and placed his penis insider her vagina.

[8] D.C. repeatedly told Walker to stop and that it hurt. She told him that she did not want to do this, and she tried to push him away. Walker responded, "Let me cum first." *Id.* at 227. After he ejaculated, Walker pulled up his pants.

Scared that Walker might hurt her further, D.C. acted like she was okay and pulled her pants up. The two walked toward the school but when Walker was stopped by friends, D.C. quickly continued on her way. Walker called after her, "I love you babe." *Id.* at 230.

[9] When D.C. arrived at school, she was crying and her hair and clothes were disheveled. She immediately informed her principal that she had been raped. D.C. was crying, shaking, and sobbing so hard that she had trouble breathing as she recounted the events. After police responded to the 911 call, D.C. took an officer to the abandoned house. She was then taken to the hospital for a sexual assault examination. The nurse observed a three- or four-inch red area on D.C.'s arm, a small open tear below her vagina, and red friction areas on each side of her vaginal valve. Subsequent testing of items in the rape kit revealed Walker's DNA and semen.

[10] Police interviewed Walker on May 12, 2015. He initially denied knowing D.C. and then admitted knowing her but insisted they had never had sex. Later in the interview, he acknowledged having sex with her at the abandoned house. Walker, however, claimed the sex was consensual.

[11] On June 12, 2015, the State charged Walker with rape. In a discovery response filed the next month, the State identified potential witnesses as "those persons who are listed on the Charging Information and any other whose name is mentioned in any discovery materials provided herewith or hereafter". *Appendix Vol. 2* at 30. The State also provided the defense with the charging

information, the police report, a supplemental police report, hospital records, D.C.'s recorded interview, and other materials. On September 28, 2015, the State supplemented its discovery response with additional information, including a certificate of analysis from the State Police Lab. The State filed its witness and exhibit list with the trial court on November 12, 2015. Due to an oversight, D.C.'s name was not included on the list.

[12] The jury trial commenced on December 7, 2015. Prior to the testimony of the first witness, Walker moved to exclude D.C. from testifying because she had not been included on the witness list. In the alternative, he requested a two-week continuance to develop possible impeachment evidence. Following a hearing outside the presence of the jury, the trial court denied the motion to exclude D.C.'s testimony, as well as the continuance. The jury found Walker guilty as charged, and he was subsequently sentenced to nine years in prison. Walker now appeals. Additional information will be provided as needed.

## Discussion & Decision

### 1. Denial of Continuance

[13] Walker contends that the trial court abused its discretion by denying the requested continuance. He does not claim that the State's omission of D.C.'s name from the witness list was deliberate or that he was surprised by any of her testimony. Indeed, the State's discovery responses filed months before trial put Walker on notice that D.C. – the alleged victim – was likely to be called as a witness at trial. *See Griffith v. State*, 59 N.E.3d 947, 957 (Ind. 2016).

[14] Defense counsel noted at trial that he was surprised when D.C.'s name was not included on the witness list submitted a few weeks before trial. Counsel argued that the omission precluded the defense from developing impeachment evidence and preparing for a rape shield hearing. Thus, Walker requested a fourteen-day continuance to "comply with the notice requirements of the Rape Shield Statute regarding a potential witness named Juwan Carwell who may have information about a false accusation of rape made by D.C. concerning him." *Appellant's Brief* at 12.

[15] Rather than grant a continuance, the trial court held a hearing outside the presence of the jury regarding the proposed impeachment evidence. Walker's mother, Latonya Davis, testified at this hearing and indicated that she had spoken with Carwell the night before trial. Carwell informed Davis that D.C. and her sister posted on Facebook after their break up that Carwell had "touched [D.C.] the wrong way" and he was "going to get what [he] deserve[d]." *Transcript* at 118. Davis testified that the post had since been deleted.[1] The trial court concluded that this evidence was too speculative and, therefore, not admissible.

[16] Generally, when the State calls a witness not previously listed, the defendant should move for a continuance to examine the witness's testimony and prepare

---

[1] On appeal, Walker asserts that Davis also testified that D.C. told Carwell, "I did this because I don't want people to think I was a hoe". *Appellant's Brief* at 16. Davis, however, made clear that Carwell had not heard this directly from D.C. and it was "just his suspicion" of why she made the report against Walker. *Transcript* at 112.

a response. *Flores v. State*, 485 N.E.2d 890, 894 (Ind. 1985). The granting of a continuance in such circumstances, however, is a matter left to the trial court's sound discretion, reversible only for an abuse thereof. *Id.* "An abuse of discretion occurs when the ruling is against the logic and effect of the facts and circumstances before the trial court or when the record demonstrates prejudice resulting from the denial." *Hamilton v. State*, 864 N.E.2d 1104, 1109 (Ind. Ct. App. 2007).

[17] The trial court did not abuse its discretion by denying Walker's request for a continuance made during trial. As noted above, Walker had ample notice that D.C. would likely testify and plenty of opportunity to develop impeachment evidence. Further, the trial court held a hearing to determine the admissibility of the recently discovered evidence that D.C. may have made prior false accusations against Carwell. This evidence was clearly weak and did not establish that D.C. had made a "demonstrably false" prior rape accusation. *See Fugett v. State*, 812 N.E.2d 846, 849 (Ind. Ct. App. 2004) ("evidence of prior false accusations may be admitted, but only if (1) the complaining witness admits he or she made a prior false accusation of rape; or (2) the accusation is demonstrably false"; "accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved").

### 2. Battery Instruction

[18] Walker also argues that the trial court abused its discretion by denying his request for the jury to be instructed on the lesser offense of battery. He claims

there is evidence to suggest that a battery without a rape occurred. Specifically, he argues that the jury could have believed that a battery occurred when he grabbed D.C.'s arm and pulled her down the alley but also believe that the subsequent sexual intercourse was consensual.

[19] "Battery is an inherently included lesser offense of rape, and the element distinguishing the two offenses is sexual intercourse." *Angle v. State*, 698 N.E.2d 356, 359 (Ind. Ct. App. 1998). Where no serious evidentiary dispute exists regarding whether sexual intercourse occurred, however, the defendant is not entitled to an instruction on battery as a lesser included offense of rape.[2] *Id.*

[20] Here, as in *Angle*, there was no dispute that sexual intercourse occurred. The only issue before the jury was whether the sexual intercourse was consensual. Under the circumstances, there was no reasonable basis for the jury to find that the lesser offense of battery occurred during the sexual intercourse but not the greater offense of rape. Further, Walker's reliance on uncharged misconduct that occurred before the sexual intercourse is improper. The trial court properly rejected the battery instruction.

[21] Judgment affirmed.

---

[2] If there is a serious evidentiary dispute about the element(s) distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. *Id.*

Kirsch, J. and Mathis, J., concur.